2002 WY 69

**In the Matter of the Appeal of Shelley DEROMEDI, Hot Springs County Assessor.**

**Shelley Deromedi, Hot Springs County Assessor, Appellant (Petitioner),**

v.

**Town of Thermopolis, Appellee (Respondent).**

No. 01–5.

Supreme Court of Wyoming.

May 7, 2002.

Dan O. Caldwell III, Hot Springs County and Prosecuting Attorney, and Daniel L. Forgey, Special Deputy Hot Springs County and Prosecuting Attorney, Thermopolis, Wyoming, Representing Appellant. Argument by Mr. Caldwell.

Michael S. Messenger of Messenger & Jurovich, Thermopolis, Wyoming, Representing Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, JJ., and SPANGLER, D.J., Retired.

GOLDEN, Justice.

[¶ 1] Appellee Town of Thermopolis (Town) established a public museum to house donated western wax figures and provide other scientific, educational, and cultural activities and displays. The Town entered into an agreement with a for-profit corporation to operate the museum and charge an admission fee to patrons. The Appellant Hot Springs County Assessor (Assessor) denied the Town a property tax exemption, the Hot Springs County Board of Equalization (CBOE) reversed that decision, and was in turn reversed by Wyoming's State Board of Equalization (SBOE). On appeal, the district court reversed the SBOE and reinstated the CBOE's order granting an exemption.

[¶ 2] We affirm the district court's decision to reverse the SBOE's decision to deny the exemption. The CBOE decision to grant the exemption is reinstated.

## ISSUES

[¶ 3] The parties agree that the following statement of the issues is presented for our review:

1. Was the Hot Springs County Board of Equalization's July 20, 1999, Findings of Fact, Conclusions of Law and Order arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law, or unsupported by substantial evidence?

2. In the context of the first issue, is the Town of Thermopolis' wax museum used primarily for a governmental purpose or as a commercial, proprietary venture?

## FACTS

[¶ 4] In 1997, the executor of the Smith Family Trust of Jackson, Wyoming, offered to donate the contents of the former "Wax Museum of Old Wyoming" to a community that could provide a suitable location. Responding to public interest in the opportunity, the Town of Thermopolis (Town) purchased a vacant building in Thermopolis to house the museum. The Town applied for a Community Development Block Grant offered by the Wyoming Department of Com-

merce, Division of Economic and Community Development, and was awarded $120,000. The application process required the Town to evaluate and project economic benefits to the community. With the grant in hand, the Town used the funds to establish a museum that not only housed the donated wax figures but included other scientific, cultural, and educational displays and activities.

[¶ 5] The Town contracted with a for-profit firm to operate the museum in exchange for $1,000 per year. The for-profit firm planned to charge admission to the museum. Before operations began, the museum appeared on the county assessor's rolls, and the Town applied for a tax exemption, which was denied by the Hot Springs County Assessor in March of 1999. The Town objected, claiming that its museum property was exempt under the state constitution and state statute, and requested a hearing before the County Board of Equalization (CBOE).

[¶ 6] The CBOE held a contested case hearing and issued Findings of Fact, Conclusions of Law and Order on July 20, 1999. It granted the exemption, and the assessor appealed to the State Board of Equalization (SBOE), which reversed the CBOE. The Town then appealed to the district court, which reversed the SBOE. This appeal followed.

## DISCUSSION

### Statutory Framework

[¶ 7] By statute, a town may establish, maintain and, in a manner the governing body determines, provide for a public museum. Wyo. Stat. Ann. § 15–1–103(a)(xxxii) (LexisNexis 2001). By constitutional[1] and statutory provision,[2] property owned by a town and used primarily for a governmental purpose is exempt from property taxes. Agency regulations have developed a list of considerations to assist with defining the term "used primarily for a governmental purpose," and approving exemptions.[3] The

---

1. "The property of the United States, the state, counties, cities, towns, school districts and municipal corporations, when used primarily for a governmental purpose, and public libraries, lots with the buildings thereon used exclusively for religious worship, church parsonages, church schools and public cemeteries, shall be exempt from taxation, and such other property as the legislature may by general law provide." Wyo. Const. Art. 15, § 12.

2. Wyo. Stat. Ann. § 39–11–105 (LexisNexis 2001) governs exemptions and provides:
 (a) The following property is exempt from property taxation:
 * * * *
 (v) Property of Wyoming cities and towns owned and used primarily for a governmental purpose including:
 (A) Streets and alleys and property used for the construction, reconstruction, maintenance and repair of streets and alleys;
 (B) Property used to furnish sewer and water services;
 (C) City or town halls, police stations and equipment, traffic control equipment, garbage collection and disposal equipment and lands and buildings used to service and repair the halls, stations or equipment;
 (D) Parks, airports, auditoriums, cemeteries, golf courses, playgrounds and recreational facilities. Any charges for the use of the facilities shall not exceed the cost of operation and maintenance to qualify for the exemption;
 (E) Personal property used exclusively for the care, preservation and administration of city or town property;

 (F) Parking lots operated on a nonprofit basis.

3. Section 4. Publicly owned property—W.S. 39–11–105(a)(i)–(vi).
 (a) Publicly owned property is not, per se, exempt from taxation. The property is exempt only "when used primarily for a governmental purpose."
 (b) The phrase "governmental purpose" cannot be precisely defined. The following considerations should be evaluated:
 (i) If a service or function is obligatory (one the governmental entity must perform as a legal duty imposed by statute), the function is governmental and the associated property is exempt.
 (ii) If a service is rendered gratuitously, supported by taxes, and for the public welfare or enjoyment generally, the property associated with providing such service is exempt.
 (iii) W.S. 39–11–105(a)(v) specifically identifies certain municipal property which is exempt (used primarily for a governmental purpose).
 (iv) W.S. 39–11–105(a)(i)(A)(E) and (ii)(A)-(D) identify specific uses of federal and state property which *are not* exempt (not used for governmental purposes).
 (v) Property owned by a governmental entity acting in its proprietary capacity is not exempt, (e.g. where a city enters the field of private competitive business for profit or into activities which may be and frequently are carried on through private enterprises).

precise issue before the CBOE and the SBOE was whether this museum is used primarily for a governmental purpose. Each agency interpreted and applied these regulations, and each reached a different conclusion.

*Standard of Review*

 [¶ 8] Our standard of review for cases arising from a county board contested case proceeding, appealed to a state agency, and finally arriving in this Court on appeal is as follows:

Since in this case the county board was the finder of the fact and the state board heard no additional testimony, we will treat the state board as an intermediate level of review and accord deference only to the county board's findings of fact. Thus, the primary focus of our review will be whether the county board's decision was lawful and supported by substantial evidence.

*Laramie County Bd. of Equalization v. Wyo. State Bd. of Equalization*, 915 P.2d 1184, 1188 (Wyo.1996) (quoting *Union Pacific Railroad Co. v. Wyo. State Bd. of Equalization*, 802 P.2d 856, 859 (Wyo.1990)).

The party challenging the sufficiency of the evidence has the burden of demonstrating the agency's decision is not supported by substantial evidence. If the agency action is supported by substantial evidence, its decision should be reversed only for errors of law. If the agency did not apply the correct rule of law, or applied it incorrectly, this Court does not defer to the agency's conclusion. The agency's errors of law are corrected by this Court.

*Id.* (quoting *Butts v. Wyo. State Bd. of Architects*, 911 P.2d 1062, 1065 (Wyo.1996)).

 [¶ 9] The scope of appellate review of agency decisions is provided by statute:

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2001).

We examine the entire record to determine if there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency, and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the conclusions of the agency. It is more than a scintilla of evidence. *Laramie Cty. Bd. of Equalization*, 915 P.2d at 1189.

 [¶ 10] Although under Title 39, taxation of property is generally the rule, the exemptions provided for by § 39–11–105(a)(v) require that we apply the rule that where the established policy of the state is to

Wyoming Department of Revenue, *Ad Valorem Tax Exemption Standards*, Ch. 14, § 4 (filed Feb. 11, 1999).

exempt publicly owned property, the burden is placed on the taxing authority to establish taxability. *City of Cheyenne v. Bd. of County Comm'rs of the County of Laramie*, 484 P.2d 706, 708–09 (Wyo.1971). The mere ownership of property by a town does not exempt the property; it must also be used primarily for governmental purposes. *Id.* at 709. When a town uses the property in a proprietary manner, the property is not exempt from taxation. *Town of Pine Bluffs v. State Board of Equalization*, 79 Wyo. 262, 288, 333 P.2d 700, 710 (Wyo.1958). The taxable status of property owned by a governmental entity must be determined as a question of fact by the use made of the property. *City of Cheyenne v. Sims*, 521 P.2d 1347, 1349 (Wyo.1974).

[¶ 11] We have recognized that the term "used primarily for a governmental purpose" is difficult to define but have found that it applied to buildings leased to profit-making corporations although located upon a municipally owned and operated airport. *City of Cheyenne v. Bd. of Cty. Comm'rs of Laramie Cty.*, 484 P.2d at 709. There, we said that the mere fact that the city accomplishes such use through a lessee or receives rent in return for such use is not controlling. *Id.* We later decided that "[w]here the primary and principal use to which property is put is public, the mere fact that income is incidentally derived from it does not affect its character as property devoted to a public use, so as to prevent its being exempt from taxation." *State Bd. of Equalization v. City of Lander*, 882 P.2d 844, 850 (Wyo.1994).

[¶ 12] The CBOE found that the museum would be used by the Town in many ways. Primarily, the museum would house the donated western wax figures, but the museum was expanded to include a Folk Center, textile studio, a conference room, and historical and educational displays. The CBOE found that the more scientific aspect of the facility would be run by Big Horn Prospecting, Inc. (BHP) and the other aspects would be operated by the Big Horn Basin Foundation. The CBOE also found that no firm agreement existed as to how any income generated would be spent, and

"[t]aking into consideration the annual lease payment and the allocation between BHP and the Town as to the payment of certain costs of operating and maintaining the facility, in connection with the numerous scientific, educational and cultural activities intended to occur at the facility, it cannot be said that the primary purpose of the Museum is to directly enhance the Town of Thermopolis' income. The primary purpose of the facility is to encourage economic development and diversity and to better the quality of life for the local citizenry." The CBOE concluded that the primary purpose of the museum was not commercial or of a proprietary nature but served a governmental purpose for the educational and recreational benefit of the citizenry and to economically benefit the local economy in general. The tax exemption was granted.

[¶ 13] The statutory exemptions provided for in § 39–11–105(a)(v) [4] are not limited to those explicitly stated. By the statutory use of the term "including" the legislature intends to include other purposes even though not specifically enumerated. *See City of Cheyenne v. Bd. of Cty. Comm'rs of Laramie Cty.*, 484 P.2d at 708. A museum is defined as "an institution devoted to the procurement, care, study, and display of objects of lasting interest or value." Merriam Webster's Collegiate Dictionary 765 (10th ed.2000). The Town points to many state statutes providing for the establishment and maintenance of public museums, and we agree that the legislature has recognized that museums serve a governmental purpose. The CBOE found that this particular museum would provide numerous scientific, educational, and cultural activities that would better the quality of life for the local citizenry. In this capacity, a public museum serves a governmental purpose similar to that served by a library, park, golf course, art gallery or other public recreational facility, and we hold that the CBOE's finding that the museum had a governmental purpose is supported by substantial evidence.

[¶ 14] According to the Assessor, the Town articulated its nongovernmental, pro-

4. W.S.1957 § 39–7, subd. 1(E).

prietary purposes of enhancing tourism and promoting growth and economic development in its grant application. The Assessor contends that the SBOE's determination that the economic development purpose served by this museum precludes an exemption is the correct conclusion. Specifically, the SBOE stated that "[w]hile economic development may be a worthwhile objective, we do not believe that it rises to a governmental function." The Assessor further contends that the SBOE properly applied a tort liability test and concluded that the purpose is proprietary because the town is charging a fee to view the museum figures.

[¶ 15] We disagree that establishing a public museum that will provide scientific, educational and cultural activities to local citizenry precludes an exemption because that museum will also enhance tourism and promote growth and economic development. The Assessor and SBOE assume that because the museum will generate income, the Town is competing against private enterprise and the museum's purpose must be deemed proprietary. However, as the Town argues, it is authorized to establish and maintain a public museum by § 15–1–103(xxxii), and any economic benefits derived from so doing do not change its purpose from a governmental purpose to a proprietary undertaking. As we have already stated, the general rule is that where the primary and principal use is public, the property is exempt and income received from its use does not preclude the exemption. *City of Lander*, 882 P.2d at 850. In *City of Cheyenne v. Bd. of Cty. Comm'rs of Laramie Cty.*, we noted that many authorities do apply a tort liability test and find a purpose proprietary if income is generated; however, we decided that generating income is not controlling, and merely renting a building to a lessee engaged in a profit-making venture is not a use for a nongovernmental purpose. 484 P.2d at 709. There, we decided that because the buildings were necessary or essential facilities to the efficient operation and maintenance of the airport, the improvements were not subject to taxation. *Id.* Here, the property's use is primarily for the governmental purpose of providing scientific, educational, and cultural activities in a museum, and any fees charged or profits generated by its lessee do not alter its tax exempt status.

[¶ 16] The order of the district court reversing the SBOE is affirmed, and the order of the CBOE is reinstated.